Argued and submitted February 25, dangerous offender sentence vacated; case remanded for resentencing; otherwise affirmed October 13, 2004

STATE OF OREGON,
*Respondent,*

*v.*

TIMOTHY NEAL WARREN,
*Appellant.*

960735047; A116965

98 P3d 1129

Walter J. Ledesma, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Jonathan Fussner, Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Assistant Attorney General.

Before Landau, Presiding Judge, and Armstrong and Brewer,* Judges.

BREWER, J.

---

* Brewer, J., *vice* Leeson, J. pro tempore.

## BREWER, J.

Defendant was convicted of assault in the first degree, ORS 163.185, and attempted murder, ORS 163.115. He appealed, assigning error to, among other things, the trial court's imposition of consecutive sentences. This court affirmed his convictions but vacated his sentences and remanded the case to the trial court for resentencing. *State v. Warren*, 168 Or App 1, 7, 5 P3d 1115, *rev den*, 330 Or 412 (2000) (*Warren I*). On remand, on the assault conviction, the trial court sentenced defendant as a dangerous offender to a 30-year indeterminate sentence with a required incarceration term of 230 months. ORS 161.725(1)(a); ORS 161.737(2).[1] It also imposed a consecutive 90-month sentence

---

[1] ORS 161.725 provides, in part:

"(1) Subject to the provisions of ORS 161.737, the maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if the court finds that because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and if it further finds, as provided in ORS 161.735[, setting out procedures for determining whether a defendant is dangerous], that one or more of the following grounds exist:

"(a) The defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."

ORS 161.737 provides:

"(1) A sentence imposed under ORS 161.725 and 161.735 for felonies committed on or after November 1, 1989, shall constitute a departure from the sentencing guidelines created by rules of the Oregon Criminal Justice Commission. The findings made to classify the defendant as a dangerous offender under ORS 161.725 and 161.735 shall constitute substantial and compelling reasons to depart from the presumptive sentence as provided by rules of the Oregon Criminal Justice Commission.

"(2) When the sentence is imposed, the sentencing judge shall indicate on the record the reasons for the departure and shall impose, in addition to the indeterminate sentence imposed under ORS 161.725, a required incarceration term that the offender must serve before release to post-prison supervision. If the presumptive sentence that would have been imposed if the court had not imposed the sentence under ORS 161.725 and 161.735 as a departure is a prison sentence, the required incarceration term shall be no less than the presumptive incarceration term and no more than twice the maximum presumptive incarceration term. If the presumptive sentence for the offense is probation, the required incarceration term shall be no less than the maximum incarceration term provided by the rule of the Oregon Criminal Justice Commission that establishes incarceration terms for dispositional departures and no more than twice that amount. However, the indeterminate sentence

on the attempted murder conviction. ORS 137.123; ORS 137.700.

Defendant again appeals, arguing, in part, that imposition of a 30-year dangerous offender sentence on his assault conviction violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution[2] as explicated in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US ____, 124 S Ct 2531, 159 L Ed 2d 403 (2004).[3] He also assigns error to the trial court's refusal to permit an independent psychological evaluation, to its refusal to allow review of his California convictions for criminal history purposes, and to its imposition of consecutive sentences. As discussed below, we conclude that imposition on defendant of a 30-year dangerous offender sentence was error. We therefore vacate that sentence and remand the case to the trial court for resentencing.

In our first opinion in this case, we described the circumstances of defendant's crimes as follows:

"[T]he victim encountered defendant and two friends as they were leaving a Portland nightclub. The victim exchanged words with the three men. The jury could have found that defendant took offense to the remarks and 'walked' the victim outside the building, while his friends

imposed under this section and ORS 161.725 is not subject to any guideline rule establishing limitations on the duration of departures."

*See also* ORS 144.226 (providing for psychiatric or psychological examination of a defendant sentenced as a dangerous offender for purpose of consideration by Board of Parole and Post-Prison Supervision of offender's eligibility for release); ORS 144.232 (setting out criteria and procedures for release on post-prison supervision of defendant sentenced as a dangerous offender for crime committed on or after November 1, 1989).

[2] The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury * * *." The Fourteenth Amendment provides, in part, that "[n]o State shall * * * deprive any person of life, liberty, or property, without due process of law." In *In re Winship*, 397 US 358, 364, 90 S Ct 1068, 25 L Ed 2d 368 (1970), the United States Supreme Court recognized that the Due Process Clause requires that a fact on which a criminal conviction is based must be proved to a jury beyond a reasonable doubt.

[3] *Apprendi* was decided by the United States Supreme Court after this court's first opinion in this case but before defendant's resentencing proceeding. *Blakely* was decided after oral argument in this case; defendant and the state submitted supplemental memoranda of authority regarding it.

remained inside. Witnesses inside the building heard one or more gunshots. The victim then walked back inside, followed by defendant. At that time, defendant pulled a gun out and shot the victim in the back of the head at close range."

*Warren I*, 168 Or App at 3. Based on that conduct, defendant was charged with and convicted of first-degree assault and attempted murder. Pursuant to ORS 137.123, the trial court designated the first-degree assault conviction as the primary offense and imposed consecutive dangerous offender and ORS 137.700 sentences, respectively, for the crimes. *Id.* at 3-4.

As noted, on defendant's first appeal, this court concluded that the trial court erred in imposing consecutive sentences under ORS 137.123(5)(a)—providing for such sentences when the second offense was not merely an incidental violation of a separate statutory provision in the course of commission of a more serious crime—because the trial court could not reasonably have inferred from the fact that defendant shot the victim in the head that defendant both "intended to kill the victim *and* that he acted volitionally to cause the victim serious physical injury." *Warren I*, 168 Or App at 5 (emphasis in original). We also concluded that the trial court's findings regarding defendant's intent were insufficient to support the imposition of consecutive sentences under ORS 137.123(5)(b), providing, in part, for such sentences when the offense for which a consecutive sentence is contemplated "caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim." *Id.*, quoted in *Warren I*, 168 Or App at 5-6. We noted that we "express[ed] no opinion on whether the record before the trial court would permit it to impose consecutive sentences under ORS 137.123(5)(b) in the event that it makes adequate findings." *Id.* at 6 n 1. In accordance with ORS 138.222(5), we vacated the sentences and remanded for resentencing. *Id.* at 7.

On remand, the trial court again designated the first-degree assault conviction as the primary offense, readopted its earlier finding that defendant was a dangerous offender by reason of suffering from a "severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another," as provided in ORS

161.725(1)(a), and sentenced defendant to a 30-year danger-
ous offender sentence, including, as noted, a required incar-
ceration term of 230 months.[4] The trial court also again sen-
tenced defendant to a 90-month sentence under ORS 137.700
on the attempted murder conviction, to run consecutively to
the dangerous offender sentence. In regard to imposition of
consecutive sentences, the trial court found that

> "[t]he jury could have based its guilty finding on the charge
> of Attempted Murder on the acts which occurred outside the
> nightclub, and its guilty finding on the charge of Assault in
> the First Degree on the acts which occurred inside. This
> court accepts that factual scenario for the purpose of consid-
> ering the imposition of * * * consecutive sentences."

Also at the resentencing hearing, defendant asked the trial
court to allow the state to obtain copies of his California con-
victions for battery for the purpose of ascertaining whether
they were the equivalent, for criminal history purposes, of
Class A misdemeanor crimes and asked for permission to
have an independent psychological evaluation. The state
opposed the latter request but did not oppose the former. The
trial court refused both requests.

In his first assignment of error on appeal after
resentencing, defendant argues that the trial court erred in
sentencing him as a dangerous offender based on a fact not
pleaded in the indictment and proved to the jury beyond a
reasonable doubt, namely, the fact that he was "suffering
from a severe personality disorder indicating a propensity
toward crimes that seriously endanger the life or safety of
another." ORS 161.725(1)(a). In his opening brief on appeal,
defendant notes that the maximum indeterminate sentence
for the Class A felony of assault in the first degree is 20 years'
imprisonment, *see* ORS 161.605(1), and that, consistently
with his criminal history, the maximum sentencing guide-
lines sentence for that crime as committed by him is a dura-
tional departure sentence of 230 months. He reasons that,
because a defendant who is found to be a dangerous offender
is subject to a maximum of 30 years' imprisonment for the

---

[4] The required incarceration term was based on the trial court's upward dura-
tional departure from the presumptive sentence for defendant's Assault I convic-
tion. ORS 161.737(2).

crime of first-degree assault, a defendant's status as a dangerous offender is the functional equivalent of an element of a greater offense than the one for which the jury found the defendant guilty. He argues that, consistently with Article I, section 11, and Article VII (Amended), section 5(3), of the Oregon Constitution, as well as with the notice and jury trial guarantees of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution as interpreted and applied in *Apprendi*, that element must be pleaded in the charging instrument and proved to the jury.

In his supplemental memorandum, defendant also directs our attention to *Blakely*. As discussed in greater detail below, in that case, the Court invalidated as contrary to the Sixth Amendment an "exceptional" sentence imposed under Washington's sentencing guidelines scheme. According to defendant, *Blakely*, like *Apprendi*, requires facts supporting a dangerous offender sentence to be pleaded and proved to the jury.

In response, the state first contends that defendant's arguments under the Oregon Constitution are not preserved. It also argues that, under both *Apprendi* and *Blakely*, a defendant is entitled to a jury trial on a disputed fact only if that fact both requires or authorizes an enhanced sentence *and* relates to the manner in which the defendant committed the crime and that the fact at issue here does not meet the latter requirement. The state argues that neither of those cases forecloses this court from distinguishing between facts relating to the commission of a crime and those that characterize the defendant (or, stated another way, between facts that are "intrinsic" to the current crime and those that are "extrinsic" to it) and that the fact at issue here—that defendant is suffering from a severe personality disorder indicating a propensity toward violent crimes, ORS 161.725(1)(a)— is extrinsic. The state further argues that the exception in *Apprendi* and *Blakely* for "the fact of a prior conviction" properly extends to other facts "relat[ed]" to the defendant's recidivism, such as the fact that a previously convicted defendant was on release status at the time of the current crime; that the defendant violated the terms of a release; that the defendant "had a certain number of prior convictions, making him

eligible for habitual offender sentencing"; or that the defendant's prior convictions "have some particular feature, such as being for particular crimes." According to the state, a dangerous offender finding "well might fall within the rubric" of such an extended exception.

The state also argues that *Blakely* pertains only to the right to trial by jury. According to the state, it does not require facts that increase a penalty beyond a prescribed statutory maximum to be pleaded in the indictment. Finally, the state argues that, if defendant's dangerous offender sentence must be reversed, the proper remedy is to remand the case to the trial court to allow the state to elect either to conduct a new sentencing proceeding consistent with defendant's jury trial right or to agree to a nondangerous offender sentence.

As to the last point, defendant replies that, if his dangerous offender sentence is unlawful under *Apprendi* and *Blakely* and this court remands the case to the trial court, the trial court would lack authority under the relevant sentencing statutes to convene a sentencing jury for the purposes of imposing a new dangerous offender sentence. According to defendant, only the legislature can provide for penalty-phase proceedings, as it has done in the case of aggravated murder sentencing under ORS 163.105.

■■     Whether defendant's sentence passes constitutional muster is a question of law that we consider pursuant to ORS 138.050(1)(a) and ORS 138.222(4)(a). *See State v. Dilts*, 179 Or App 238, 244, 39 P3d 276 (2002), *aff'd*, 336 Or 158, 180, 82 P3d 595 (2003), *vac'd and rem'd on other grounds*, 542 US ____ , 124 S Ct 2906, 159 L Ed 2d 809 (2004). As an initial matter, we agree with the state that defendant failed to preserve any challenge to his dangerous offender sentence under the state constitution. *See State v. Selness/Miller*, 334 Or 515, 522-23, 54 P3d 1025 (2002) (court addresses state constitutional question before federal constitutional question; citing *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983)). In his trial memorandum in the resentencing proceeding, defendant argued only that imposition of a dangerous offender sentence was contrary to protections conferred by the federal constitution as interpreted in *Apprendi* and

related federal cases. Although the state discussed Article I, section 11, of the Oregon Constitution in its trial memorandum, it did so only in aid of its argument regarding the meaning of *Apprendi*. In oral argument before the resentencing court, neither defendant nor the state invoked the Oregon Constitution. In short, the trial court was not presented with that issue with sufficient clarity to permit it to consider and correct its error, if correction was warranted. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (stating standard); *see also Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 607-08, 84 P3d 147 (2004) (discussing application of preservation principles where proponent of position did not raise issue in trial court, although opponent discussed it in its response).

■ We turn to defendant's argument under the federal constitution. Again, defendant argues that, under the notice and jury trial guarantees of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution as interpreted and applied in *Apprendi* and *Blakely*, the imposition of a 30-year dangerous offender sentence is constitutional only if the fact that a defendant is suffering from a severe personality disorder as provided in ORS 161.725(1)(a) is pleaded in the charging instrument and proved beyond a reasonable doubt to the jury.

Because they are controlling, we begin with a brief review of the United States Supreme Court's decisions in *Apprendi* and *Blakely*. In the former case, the defendant pleaded guilty to possession of a firearm for an unlawful purpose. *Apprendi*, 530 US at 469. Under the applicable New Jersey sentencing scheme, that crime carried a penalty range of five to ten years. *Id.* at 468. However, a separate statute provided for an extended term of imprisonment if the defendant "acted with a purpose to intimidate an individual or group of individuals because of race" or other characteristic. *Id.* at 468-69. The trial court held a post-verdict evidentiary hearing, found by a preponderance of the evidence that the defendant's conduct had met that criterion, and imposed a 12-year sentence. *Id.* at 470-71.

The Supreme Court concluded that New Jersey's procedure violated the defendant's right to a jury trial under the Sixth Amendment and to due process of law under the Fourteenth Amendment to the United States Constitution. The Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. The Court reversed and remanded for further proceedings relating to the defendant's sentence. *Id.* at 497.

Four years later, in *Blakely*, the Court considered whether a Washington state sentencing scheme contravened the above-quoted principle. Under the relevant scheme, taking into consideration the defendant's criminal history, the crime to which the defendant had pleaded guilty was subject to a "standard range" sentence of 49 to 53 months. *Blakely*, 542 US at ___ , 124 S Ct at 2535. However, as permitted under the scheme, the trial court found "substantial and compelling reasons justifying" the imposition of an "exceptional sentence" of 90 months. *Id.* The Washington appellate courts upheld the sentence on the ground that it was within the statutory maximum indeterminate sentence allowable for the crime of conviction. *Id.* at 2536 (citing *State v. Blakely*, 111 Wash App 851, 870-71, 47 P3d 149 (2002)).

As it had in *Apprendi*, the Supreme Court reversed and remanded. The Court reasoned that, consistently with the principle established in *Apprendi*, the relevant "prescribed statutory maximum" under the Washington sentencing scheme was the "standard range" sentence of 49 to 53 months, because that was the maximum sentence that the trial court could impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*— that is, *without* any additional findings." *Id.* at 2537-38 (emphasis in original). The Court concluded that imposition of an "exceptional sentence" under the Washington scheme therefore violated the defendant's Sixth Amendment right to a jury trial. *Id.* at 2538.

After the Court decided *Apprendi*, but before it decided *Blakely*, both this court and the Oregon Supreme

Court had concluded in *Dilts* that an upward departure sentence imposed under Oregon's sentencing guidelines statutory scheme did not contravene the Sixth or Fourteenth Amendment as applied in *Apprendi* because, consistently with the reasoning in that case, an upward departure sentence, up to and including the maximum term for the relevant class of felony as provided in ORS 161.605, constituted the "prescribed statutory maximum" for the crime. *Dilts*, 179 Or App at 248; 336 Or at 175-76. However, after it decided *Blakely*, the United States Supreme Court vacated and remanded the Oregon Supreme Court's decision in *Dilts* for reconsideration in light of *Blakely*. Since that time, in *State v. Sawatzky*, 195 Or App 159, 96 P3d 1288 (2004), this court has itself reconsidered in light of *Blakely* whether Oregon's sentencing guidelines departure sentences comport with the Sixth Amendment. We have concluded that they do not because, consistently with the *Blakely* Court's analysis of Washington's sentencing scheme—which is comparable in relevant respects to Oregon's sentencing guidelines scheme—the "prescribed statutory maximum" sentence that a trial court may impose on a defendant based on the facts found by the jury is the presumptive sentence, that is, the sentence based on the offender's crime and criminal history. *Sawatzky*, 195 Or App at 172.

The United States Supreme Court has not, however, considered the application of the principles announced in *Apprendi*, and clarified in *Blakely*, to a scheme similar to Oregon's dangerous offender sentencing scheme, nor have the appellate courts of this state rendered a controlling decision on the question. We turn to that issue.

As noted above, under ORS 161.725(1)(a), a sentencing court may impose an indeterminate 30-year sentence on an offender if the court—not the jury—finds that the defendant meets the relevant criteria, including that the defendant is being sentenced for a Class A felony and that he or she is suffering from "a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another." Under ORS 161.737(1), a sentence imposed under that provision for a crime committed on or after November 1, 1989, "shall constitute a departure from the sentencing guidelines." The question thus becomes

whether a 30-year dangerous offender sentence exceeds the prescribed statutory maximum sentence that a trial court is authorized to impose on a defendant based on the facts found by the jury in the case.

We readily conclude that it does. Again, in *Blakely*, the court determined that the prescribed statutory maximum under Washington's sentencing scheme is the "standard range" sentence authorized by the jury's verdict, not the "exceptional sentence" based on additional facts found by the trial court. 542 US at ___, 124 S Ct at 2537-38. Analogizing Washington's scheme to Oregon's, we concluded in *Sawatzky* that the prescribed statutory maximum sentence for a crime subject to Oregon's sentencing guidelines scheme is the presumptive sentence that is applicable to that crime, not a departure sentence authorized by the applicable sentencing guideline rules or the indeterminate statutory maximum under ORS 161.605. *Sawatzky*, 195 Or App at 170-72.

The same reasoning is applicable here. Consistently with *Blakely*, the prescribed statutory maximum sentence that the trial court properly could have imposed in this case for defendant's crime of assault in the first degree (that is, the maximum sentence that the trial court could have imposed "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," "without any additional findings," *Blakely*, 542 US at ___, 124 S Ct at 2537-38 (emphasis omitted)) was the sentence prescribed in ORS 137.700— or, if it would result in a greater sentence, the presumptive sentence for that crime. *See* ORS 137.637 ("When a determinate sentence of imprisonment is required or authorized by statute, the sentence imposed shall be the determinate sentence or the sentence as provided by [the sentencing guidelines rules], whichever is longer.").[5] Moreover, that is so notwithstanding that the "departure" from such an underlying sentence is authorized by ORS 161.725 to 161.737 rather than, as in *Sawatzky*, the sentencing guideline rules. *See Apprendi*, 530 US at 491-97 (invalidating statutory scheme

---

[5] The determinate sentence for assault in the first degree is 90 months' imprisonment. ORS 137.700(2)(a)(F). The record indicates that, on resentencing, the trial court determined that defendant's crime fell into sentencing guidelines grid block 10-C, providing for a presumptive sentence of 111 to 115 months. We express no opinion on the correctness of the latter determination.

that provided for imposition of enhanced sentences based on findings made by trial court). Accordingly, imposition on defendant of a 30-year dangerous offender sentence based on the trial court's finding that he suffered from a severe personality disorder as provided in ORS 161.725(1)(a) violated defendant's right under the Sixth and Fourteenth Amendments to have that fact proved to a jury beyond a reasonable doubt.

As noted, the state argues that, consistently with *Apprendi*, a fact that results in the enhancement of a defendant's sentence beyond the prescribed statutory maximum for a class of crime must be found by a jury only when that fact pertains to the manner of commission of the crime at issue, not when it "serves merely to characterize the defendant." The state reasons that, by recognizing an exception for facts relating to a defendant's prior convictions, the *Apprendi* Court implicitly recognized that other facts characterizing the defendant himself or herself, as opposed to facts pertaining to the commission of the crime at issue, also need not be found by a jury. According to the state, the Court's failure to mention any other types of facts that are not subject to a jury determination is of no significance because even the fact of a defendant's prior convictions was not at issue in *Apprendi* and the Court's mention of that type of fact was therefore mere *dictum*. The state therefore urges us to treat both *Apprendi* and *Blakely* as having enunciated no more than the principle that was established under Article I, section 11, by the Oregon Supreme Court in *State v. Wedge*, 293 Or 598, 652 P2d 773 (1982), and *State v. Quinn*, 290 Or 383, 623 P2d 630 (1981).[6]

We disagree with the state's characterization of *Apprendi*. The Court made clear in that case that the relevant distinction relates, not to the type of fact at issue, but to the consequence of finding it, namely, whether or not such a finding results in a sentence beyond the prescribed statutory maximum for the offense found by the jury. *See Apprendi*,

---

[6] As previously described, in its supplemental memorandum of authorities the state also makes an additional argument: the exception from the proof requirement for the fact of a prior conviction extends to facts related to the prior conviction, such as the offender's release status or the offender's "habitual" commission of crimes. That argument has no relevance in this case.

530 US at 484-85 (noting that, in *Mullaney v. Wilbur*, 421 US 684, 44 L Ed 2d 508, 95 S Ct 1881 (1975), it had held that the greater "consequences" of a guilty verdict for murder as opposed to manslaughter required the state affirmatively to prove that the defendant had the requisite mental state for the former); *Apprendi*, 530 US at 494 (rejecting distinction between "elements" and "sentencing factors"; "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"). The Court established as a matter of general principle that any fact that has the consequence of enhancing a prescribed statutory sentence constitutes, in effect, an element of an aggravated offense and therefore must be pleaded and proved. The Court then recognized an exception for one type of fact—a defendant's prior convictions—that may have that result. It explained, however, that such a fact need not be pleaded and proved only because it already has been subjected to a previous determination by a jury. *See id.* at 496 (noting the "vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof"). In other words, the basis for the exception from the general rule is procedural, not substantive. *See id.* at 475-76 (explaining that the question was whether the Sixth and Fourteenth Amendments required the application of "procedural safeguards," including notice, trial by jury, and proof beyond a reasonable doubt, to the fact on which the defendant's enhanced sentence was based; "The substantive basis for New Jersey's enhancement is thus not at issue; the adequacy of New Jersey's procedure is."). Indeed, *Blakely* itself characterizes the principle regarding sentencing factors that the Court established in *Apprendi* as a "bright-line rule." *Blakely*, 542 US at ____ , 124 S Ct at 2540. Accordingly, the state's proposed substantive category of "facts characterizing the defendant" is irreconcilable with *Apprendi*.[7]

---

[7] We note that the Court recognized the dichotomy proposed by the state; it did so, however, in the context of facts properly *within* the category of mere "sentencing factors." *See Harris v. United States*, 536 US 545, 549, 122 S Ct 2406, 153 L Ed 2d 524 (2002) ("After the accused is convicted, the judge may impose a sentence

Again, with the exception of the fact of a defendant's prior convictions, if the consequence of finding a fact is the imposition of a sentence outside the prescribed statutory maximum for the crime for which the jury found the defendant guilty, the Sixth and Fourteenth Amendments require that the fact be proved to the jury beyond a reasonable doubt. Here, the maximum sentence the trial court could have imposed based solely on the jury's verdict was the sentence provided in ORS 137.700 or, if longer, defendant's presumptive sentencing guidelines sentence. Both are less than 30 years. It follows that defendant's 30-year dangerous offender sentence is constitutionally infirm and must be vacated.

■ We address one additional issue relating to the requirements established by *Apprendi* and *Blakely*. As described above, defendant asserts, in part, that, the fact on which the court based his dangerous offender sentence was required to be pleaded in the indictment, and, therefore, his conviction must be overturned. We disagree. The *Apprendi* Court noted that it had recognized such a procedural requirement—along with submission to a jury and proof beyond a reasonable doubt—in *Jones v. United States*, 526 US 227, 119 S Ct 1215, 143 L Ed 2d 311 (1999). *Apprendi*, 530 US at 476. The Court also stated that "[t]he Fourteenth Amendment commands the same answer in this case involving a state statute." *Id.* However, in neither *Apprendi* nor *Blakely* did the Court reverse the conviction of the offender in the respective case. Accordingly, nothing in those cases requires us to conclude that the indictment in this case was deficient. *Cf. State v. Ferrell*, 315 Or 213, 222, 843 P2d 939 (1992) (where an indictment states an otherwise prosecutable offense, a defect in the indictment does not require that the conviction be reversed).

The state next argues that, on remand to the trial court, it should be permitted to elect between conducting a sentencing proceeding before a jury and agreeing to imposition of a sentence that is consistent with the jury's original

---

within a range provided by statute, basing it on various facts relating to the defendant and the manner in which the offense was committed."); *Apprendi*, 530 US at 481 (judges may "exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute" (emphasis in original)).

verdict, presumably meaning without a dangerous offender enhancement. Defendant replies that, unlike the aggravated murder sentencing statute, *see* ORS 163.150, the dangerous offender statutes do not provide for a separate sentencing proceeding before a jury and that for this court to fashion such a procedure would violate both the court's obligation under ORS 174.010 not to read into the statutes what the legislature has omitted and the state constitutional provisions pertaining to separation of powers, Article III, section 1, and to the enactment of legislation, Article IV, section 25, and Article V, section 15b. *See State v. Braughton*, 28 Or App 891, 893 n 2, 561 P2d 1040 (1977) (court's sentencing authority "exists solely by virtue of a statutory grant of power and therefore cannot be exercised in any manner not specifically authorized").

Whether a trial court is authorized to put such a procedure into effect is, at this time, a purely hypothetical question; no court has yet done so in this case. We therefore decline to address the question.

Finally, because defendant's other claimed errors, each of which pertains to his sentences, may be rendered moot on resentencing, we decline to address them as well.

In summary, the imposition on defendant of a 30-year dangerous offender sentence violated defendant's rights, under the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution, to have the fact on which that sentence was based be proved to a jury beyond a reasonable doubt. We therefore vacate defendant's dangerous offender sentence and remand the case to the trial court for resentencing.

Dangerous offender sentence vacated; case remanded for resentencing; otherwise affirmed.