Submitted on remand from the Oregon Supreme Court January 3, on appeal,
sentence vacated; remanded for resentencing, otherwise affirmed;
on cross-appeal, affirmed June 11, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*
*Cross-Appellant,*

*v.*

## GREGORY JAMES HOPSON,
*Defendant-Appellant,*
*Cross-Respondent.*

Josephine County Circuit Court
03CR0270; A126720

186 P3d 317

Peter Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, for appellant-cross-respondent.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Assistant Attorney General, for respondent-cross-appellant.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant was convicted of first-degree sodomy, ORS 163.405, and first-degree kidnapping, ORS 163.235. At sentencing, the court determined that, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), it could not make factual findings in support of consecutive sentences, ORS 137.123, but that it could make factual findings in support of a sexually violent dangerous offender sentence, under ORS 137.767, on the sodomy conviction. Defendant appealed, arguing that the court erred in imposing a sexually violent dangerous offender sentence because *Blakely* and *Apprendi* required jury findings to support such a sentence; the state cross-appealed, arguing that the court erred in concluding that it could not impose consecutive sentences on the convictions in light of *Blakely* and *Apprendi*. We reversed and remanded for resentencing on cross-appeal in light of our then-recent decision in *State v. Tanner*, 210 Or App 70, 150 P3d 31 (2006), and, consequently, did not reach the issue raised on appeal. *State v. Hopson*, 214 Or App 288, 164 P3d 342 (2007). The Oregon Supreme Court allowed review, vacated our decision, and remanded the case for reconsideration in light of *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ___ US ___, 128 S Ct 1657 (2008). *State v. Hopson*, 343 Or 366, 170 P3d 1064 (2007).

■ In *Ice*, the Oregon Supreme Court held that judicial factfinding in support of consecutive sentences pursuant to ORS 137.123 violated the rule of law announced in *Blakely* and *Apprendi*. Consequently, and contrary to our original disposition, the trial court in this case was correct in concluding that it lacked the ability to make factual findings in support of a consecutive sentence.

■ Given that conclusion, we must now address defendant's assignment of error on appeal: Does judicial factfinding in support of a sexually violent dangerous offender sentence pursuant to ORS 137.765 likewise run afoul of *Blakely* and *Apprendi*? As explained below, we conclude that the answer is yes. Accordingly, we remand for resentencing.

ORS 137.767 allows a sentencing court to impose a sentence that includes a lifetime period of post-prison supervision for certain offenses, but only if the court finds that the "person is a sexually violent dangerous offender." ORS 137.765(2)(b). "Sexually violent dangerous offender," in turn, is defined in ORS 137.765(1)(b) as "a person who has psychopathic personality features, sexually deviant arousal patterns or interests and a history of sexual assault and presents a substantial probability of committing a crime listed in subsection (3) of this section."[1]

In this case, defendant argued at sentencing that judicial factfinding in support of a sexually violent dangerous offender sentence would run afoul of the rule of law announced in *Blakely*, as interpreted in our then-recent case, *State v. Warren*, 195 Or App 656, 98 P3d 1129 (2004), *rev den*, 340 Or 201 (2006) (regarding dangerous offender sentences). The sentencing court disagreed, and proceeded to find that defendant displayed psychopathic personality features and sexually deviant arousal patterns of interest, that he had a history of sexual assaults, and that he presented a substantial probability of committing crimes listed in ORS 137.765(3).

Defendant renews his challenge on appeal, reiterating the basic tenets from *Blakely* and *Apprendi*: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 US at 490. Moreover, a "statutory maximum" is the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 US at 303 (emphasis omitted).

The determination that a convicted defendant is a sexually violent dangerous offender has very substantial practical consequences. In this case, for example, but for defendant's designation as a sexually violent dangerous

---

[1] ORS 137.767(6) and (7) currently make provisions for jury determination of facts relevant to sexually violent dangerous offender sentencing, but those provisions were not in place when defendant was sentenced. Or Laws 2007, ch 16, § 7.

offender, he would have been required to serve only a three-year term of post-prison supervision after his incarceration term. OAR 213-005-0002(2). As sanction for violation of the terms of post-prison supervision, an offender serving a three-year term of post-prison supervision may be required to serve up to a maximum of 12 months' incarceration. OAR 213-011-0004(3)(c).

In contrast, as a sexually violent dangerous offender, defendant is required to serve a lifetime term of post-prison supervision after his incarceration. OAR 213-005-0002(2)(b)(B); OAR 213-005-0004(3). Moreover, the limits on sanctions provided in OAR 213-011-0004(3) do not apply. OAR 213-005-0004(4). Rather, for violations of post-prison supervision, defendant "may be incarcerated up to 180 days for any violation of post-prison supervision. The sanction may be imposed repeatedly during the term of the post-prison supervision for subsequent post-prison supervision violations." OAR 213-005-0004(5). In addition, as a sexually violent dangerous offender, defendant "shall be subject to intensive supervision for the full period of post-prison supervision[.]" OAR 213-011-0003(2). He "may not reside near locations where children are the primary occupants or users." OAR 255-060-0009(1); *see also* OAR 291-202-0040(1).

Despite those enhanced aspects of defendant's sentence, the state argues that the rule of law from *Blakely* and *Apprendi* should not apply, because that rule should be applicable only when an "enhanced punishment involves a particularly heightened stigma and liberty deprivation"—and, in the state's view, lifetime intensive post-prison supervision does not meet that standard. In support of that view, the state relies on *United States v. Nachtigal*, 507 US 1, 113 S Ct 1072, 122 L Ed 2d 374 (1993). As explained below, we do not view *Nachtigal* as supporting the state's contention.

In *Nachtigal*, the defendant, who was charged with a misdemeanor offense of driving under the influence, argued that he should be entitled to a jury trial because, even though the offense only carried a maximum term of imprisonment of six months, the court could alternatively impose a five-year

probationary term and could also impose numerous discretionary conditions of probation. 507 US at 2. The Supreme Court rejected that argument.

In so holding, the Court observed that whether a defendant is entitled under the Sixth Amendment to a jury trial depends on "objective indications of the seriousness with which society regards the offense." *Id.* at 3 (quoting *Blanton v. North Las Vegas*, 489 US 538, 541, 109 S Ct 1289, 103 L Ed 2d 550 (1989)). The Court then reiterated the analysis that it had employed in *Blanton*:

> "The best indicator of society's views is the maximum penalty set by the legislature. *Ibid.* While the word 'penalty' . refers both to the term of imprisonment and other statutory penalties, we stated that '[p]rimary emphasis * * * must be placed on the maximum authorized period of incarceration.' [*Blanton*, 489 US] at 542. We therefore held that offenses for which the maximum period of incarceration is six months or less are presumptively 'petty.' A defendant can overcome this presumption, and become entitled to a jury trial, only by showing that the additional penalties, viewed together with the maximum prison term, are so severe that the legislature clearly determined that the offense is a 'serious' one. *Id.* at 543."

*Nachtigal*, 507 US at 3-4 (first brackets and ellipsis in original). Applying that analysis, the Court in *Nachtigal* concluded that, "[b]ecause the maximum term of imprisonment is six months, [the DUII] is presumptively a petty offense to which no jury trial right attaches." *Id.* at 4. The Court further concluded that the fact that the defendant in *Nachtigal* was subject to, *inter alia*, a maximum five-year term of probation as an alternative to incarceration did not overcome the *Blanton* presumption because,

> "[l]ike a monetary penalty, the liberty infringement caused by a term of probation is far less intrusive than incarceration. The discretionary probation conditions do not alter this conclusion; while they obviously entail a greater infringement on liberty than probation without attendant conditions, they do not approximate the severe loss of liberty caused by imprisonment for more than six months."

*Id.* at 5 (citation omitted).

The state here, invoking *Nachtigal*, argues that "any liberty deprivation or stigma" associated with the enhanced supervision term resulting from the judicial imposition of a sexually violent dangerous offender designation is more closely analogous to the probationary term and conditions implicated in *Nachtigal* than to an increased period of incarceration, as in *Apprendi* and *Blakely*.

We note, as an initial matter, that *Nachtigal* does not purport to describe when a defendant who was entitled to a jury trial on a felony charge is entitled to have a jury find sentence enhancement factors. Rather, *Blakely* and *Apprendi* do that—and they do it without reference to *Nachtigal*, *Blanton*, or any other case about discerning the difference between a "petty" and a "serious" offense. Moreover, the test announced in *Blakely* and *Apprendi* bears no resemblance to the test described in *Nachtigal* and *Blanton*.

Further, and in a related sense, the *Blanton/ Nachtigal* formulation is predicated on an assessment of the maximum *totality* of punishment to which the defendant is exposed. That inquiry does not purport to permit a court, in a sentencing context, to segregate and remove from the jury's consideration "nonserious," as opposed to "serious," sanctions. Thus, even under its own terms, if we were to apply the *Blanton/Nachtigal* "seriousness" formulation here, we would be obligated to consider the *entire* putative sentencing "package"—that is, the *combination* of the "additional penalties" attending the sexually violent dangerous offender designation (*viz.*, lifetime intensive post-prison supervision with unlimited incarcerative sanctions) and the "maximum prison term." *Nachtigal*, 507 US at 4.

In this case, defendant received a mandatory minimum sentence on his sodomy conviction of 100 months pursuant to ORS 137.700(2)(a)(L) (Measure 11). Because, under ORS 137.700(1), he will not be eligible for any reductions in that term, that is his "prison term" for purposes of the test set forth in *Nachtigal*. Under Oregon law, there are only a handful of crimes that carry sanctions as severe or more severe. *See generally* ORS 137.700 (murder, attempted aggravated murder, manslaughter, and certain first-degree sexual offenses); ORS 163.095 (aggravated murder). In addition, the

only crimes for which a defendant must serve lifetime post-prison supervision are aggravated murder and murder, unless the defendant has been found to be a sexually violent dangerous offender. OAR 213-005-0004. Given the seriousness of the offense and the extent of the sanctions involved, the state's suggestion, under *Nachtigal*, that the sanctions at issue here are "petty" rather than "serious" is not well taken.

Conversely, application of *Blakely* and *Apprendi* here is straightforward. Post-prison supervision is part of a sentence. *See, e.g., Haskins v. Palmateer*, 186 Or App 159, 63 P3d 31, *rev den*, 335 Or 510 (2003); OAR 213-005-0001(3); OAR 213-005-0003. A court is limited to the "statutory maximum" sentence that can be imposed based on the facts found by the jury or admitted by defendant, other than prior convictions. In particular, as the Court noted in *Blakely*, the statutory maximum is the "maximum sentence a judge may impose *solely* on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 US at 303 (original emphasis omitted; emphasis added). In order to impose post-prison supervision beyond the three-year term otherwise authorized by OAR 213-005-0002(2) (that is, the "statutory maximum"), the sentencing court needed to make additional factual findings—those required by ORS 137.765(2)(b). Because those facts were not found by a jury beyond a reasonable doubt, the court erred in imposing a sexually violent dangerous offender sentence.

On appeal, sentence vacated; remanded for resentencing; otherwise affirmed. On cross-appeal, affirmed.