Submitted May 28, affirmed November 12, 2008, petition for review denied
February 11, 2009 (346 Or 11)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LADON ANDRE STEPHENS,
*Defendant-Appellant.*

Multnomah County Circuit Court
020533200; A125275

198 P3d 423

Peter A. Ozanne, Executive Director, Peter Gartlan, Chief Defender, Legal Services Division, and Louis R. Miles, Deputy Defender, Office of Public Defense Services, filed the opening brief for appellant. On the supplemental brief was Louis R. Miles, Deputy Defender. Ladon Andre Stephens filed a supplemental brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Janet A. Metcalf, Assistant Attorney General, filed the briefs for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

Defendant was convicted of multiple counts of aggravated murder, attempted aggravated murder, rape, sodomy, burglary, and other offenses. On appeal, he advances 20 assignments of error. In brief, he contends that the trial court erred in denying his motions to controvert the affidavits supporting two search warrants, in denying his motions to suppress various items of evidence, and in admitting certain written evidence. He also contends that the trial court committed plain error in imposing the sentences on many of his convictions. We affirm, writing only to address defendant's contentions concerning the lawfulness of his sentences.[1]

Defendant was indicted for aggravated murder, attempted aggravated murder, numerous sex offenses, and related crimes arising out of a series of incidents that occurred between February 1997 and April 2002 in which he raped and murdered Melissa Bittler and brutalized four other women: C, H, J, and B. Recounting the details of those offenses is not necessary to the disposition of the issues before us concerning the lawfulness of defendant's sentences.

A jury found defendant guilty of nine counts of aggravated murder, ORS 163.095; six counts of attempted aggravated murder, ORS 163.095, ORS 161.405; six counts of rape in the first degree, ORS 163.375; three counts of sodomy in the first degree, ORS 163.405; one count of unlawful sexual penetration in the first degree, ORS 163.411; one count of kidnapping in the first degree, ORS 163.235; three counts of burglary in the first degree, ORS 164.225; and one count of assault in the fourth degree, ORS 163.610. In an aggravated murder penalty-phase proceeding, *see* ORS 163.150, the jury also determined that defendant's sentence for his aggravated murder convictions should be life without the possibility of

---

[1] In one of those assignments of error, defendant contends that the trial court erred in failing to suppress DNA evidence seized from defendant by his parole officer pursuant to ORS 137.076. In its brief, the state argued that the evidence was seized pursuant to a warrant, but that the seizure was lawful in any event under the authority conferred by the statute. Defendant moved to strike the reference to the warrant, as the record does not demonstrate that the evidence was seized pursuant to a warrant. The state does not contest that fact. We grant the motion to strike, noting that, in any event, the existence or nonexistence of the warrant does not matter to our analysis.

parole. It further found beyond a reasonable doubt that defendant was suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another, for the purpose of sentencing defendant as a dangerous offender as provided in ORS 161.725.[2]

The trial court merged defendant's aggravated murder convictions based on the murder of Bittler and, consistently with the jury's findings during the penalty-phase proceeding, sentenced defendant on the resulting single conviction to life without the possibility of parole. The trial court also merged defendant's five convictions for attempted aggravated murder based on his conduct involving B and sentenced him on the resulting conviction to a 30-year indeterminate maximum dangerous offender sentence. The trial court merged defendant's three convictions for first-degree burglary and sentenced him to a 30-year indeterminate maximum dangerous offender sentence on that conviction as well. The trial court also sentenced defendant to a 30-year indeterminate maximum dangerous offender sentence on each of his convictions for rape, sodomy, unlawful sexual penetration, and kidnapping. Finally, it sentenced him to 365 days on his conviction for assault in the fourth degree.

---

[2] ORS 161.725 provides, in part,

"(1) Subject to the provisions of ORS 161.737, the maximum term of an indeterminate sentence of imprisonment for a dangerous offender is 30 years, if because of the dangerousness of the defendant an extended period of confined correctional treatment or custody is required for the protection of the public and one or more of the following grounds exist:

"(a) The defendant is being sentenced for a Class A felony and the defendant is suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another."

A sentence imposed under ORS 161.725 for a crime committed on or after November 1, 1989, constitutes a departure sentence for the purposes of the sentencing guidelines. ORS 161.737(1); *see also, e.g., State v. Isom,* 201 Or App 687, 689, 120 P3d 912 (2005) (noting that 30-year dangerous offender sentence constitutes an "upward departure"). At the time of defendant's trial, the appellate courts of this state had not determined whether findings required under ORS 161.725(1)(a) were subject to the right to a jury trial as articulated in *Apprendi v. New Jersey,* 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). The trial court correctly concluded that they were. *See State v. Warren,* 195 Or App 656, 98 P3d 1129 (2004), *rev den,* 340 Or 201 (2006). ORS 161.735, setting out procedures for imposition of dangerous offender sentences, was amended in 2005 to incorporate the requirement that a jury find the factual prerequisite for imposition of such a sentence. Or Laws 2005, ch 463, §§ 10, 15.

Each of defendant's 30-year indeterminate maximum dangerous offender sentences also included a so-called "required incarceration term"—that is, a determinate mandatory minimum portion—in an amount greater than what would have been the presumptive sentence for the crime. *See* ORS 161.737(2).[3] In each instance, the trial court noted the aggravating factor or factors on which it relied in imposing a required incarceration term of greater length than the presumptive sentence for the crime.

Finally, the trial court made determinations regarding whether defendant's sentences should be served concurrently or consecutively. The court ordered that defendant's sentences for his two convictions for rape involving C be served concurrently with each other and that his sentence for the rape of Bittler be served concurrently with his other sentences for crimes against her.[4] It also ordered that his 365-day sentence for fourth-degree assault against B be served concurrently with his sentence for burglary involving B. The court ordered that the remainder of defendant's sentences be served consecutively to his two concurrent sentences for the rape of C and to each other, in the chronological order in which defendant committed the crimes.

In support of the imposition of those consecutive sentences, the trial court determined that the first of defendant's sentences imposed on the crimes committed against, respectively, H, J, Bittler, and B were subject to consecutive sentences under ORS 137.123(2), relating to sentences for

---

[3] ORS 161.737(2) provides, in part,

"When the sentence is imposed, the sentencing judge * * * shall impose, in addition to the indeterminate sentence imposed under ORS 161.725, a required incarceration term that the offender must serve before release to post-prison supervision. If the presumptive sentence that would have been imposed if the court had not imposed the sentence under ORS 161.725 and 161.735 as a departure is a prison sentence, the required incarceration term shall be no less than the presumptive incarceration term and no more than twice the maximum presumptive incarceration term."

[4] The transcript of the sentencing proceeding indicates that the trial court imposed a consecutive sentence on defendant's conviction for the rape of Bittler and a concurrent sentence on his conviction for the sodomy of Bittler. The judgment reflects that the sentence on the sodomy conviction is consecutive and the sentence on the rape conviction is concurrent. In light of our disposition of defendant's challenges to certain of his consecutive sentences, that apparent inconsistency is of no significance.

offenses that "do not arise from the same continuous and uninterrupted course of conduct." Specifically, the court found that each of those crimes was part of a "new day" or a "separate incident." The trial court imposed the remaining consecutive sentences pursuant to ORS 137.123(5)(a) and (b), relating to sentences for offenses that constituted an indication of defendant's willingness to commit more than one criminal offense and that caused or risked causing a greater or qualitatively different harm than other offenses committed during the same course of conduct. For example, in ordering that defendant serve his sentence for sodomy involving H consecutively to his sentence for the rape of H, the trial court stated, "ORS 137.123(5)(a), this is not an incidental violation of law on the way to the commission of the greater offense, and (b), it is qualitatively a different nature and type of harm." The court made similar findings as to the other sentences ordered to be served consecutively under ORS 137.123(5)(a) and (b).

In terms of its total duration, defendant's sentences consisted of six consecutive 30-year indeterminate maximum terms, followed by a term of life in prison without parole, followed by five additional consecutive 30-year indeterminate maximum terms; defendant's concurrent sentences were subsumed within that total.[5]

■ On appeal, defendant argues that the trial court erred in imposing what he refers to as "departure" sentences based on facts not found by a jury or admitted by him, in violation of the Sixth Amendment to the United States Constitution as applied in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). More precisely, defendant challenges the "required incarceration terms"

---

[5] After the merger of various convictions, many of defendant's convictions also were subject to ORS 137.700 (Measure 11); the judgment noted the portions of the respective sentences that were to be served under that statute. As to all sentences except the 365-day sentence on defendant's conviction of assault in the fourth degree, the court denied defendant consideration for sentence modification programs under ORS 137.750. Where applicable, the trial court also established terms of post-prison supervision. Those aspects of defendant's sentences are not at issue in this appeal.

imposed by the court in the context of 12 of his 30-year indeterminate maximum dangerous offender sentences. Defendant concedes that he did not raise that issue below, but urges us to consider it as plain error. The state responds that the error is not plain, because the record is subject to competing inferences as to whether defendant chose to forgo his jury trial right in that regard. *See State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

■      Under ORAP 5.45(1), this court has discretion to review an unpreserved error that is "apparent on the face of the record." The error must (1) be an error of law, (2) be apparent, meaning the legal point is obvious, not reasonably in dispute, and (3) appear on the face of the record such that we "need not go outside the record or choose between competing inferences to find it." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

We agree with the state that the asserted error is not plain, but for a different reason, namely, that it is not beyond reasonable dispute that the trial court erred at all. Under *Apprendi*, defendant was entitled to a jury trial of any fact that increased his sentences beyond the prescribed statutory maximum sentences for his offenses—in this case, the applicable Measure 11 and presumptive sentences. *See, e.g., State v. Dilts*, 337 Or 645, 652, 103 P3d 95 (2004) (consistently with *Apprendi* and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), sentencing guidelines presumptive sentence is prescribed statutory maximum sentence for a crime subject to guidelines; facts supporting a sentence in excess of presumptive sentence must be found by a jury beyond a reasonable doubt). As we have noted, as to each of defendant's convictions on which the trial court imposed a dangerous offender sentence, the jury found beyond a reasonable doubt that defendant was suffering from a severe personality disorder indicating a propensity toward crimes that seriously endanger the life or safety of another. Those findings, which are the statutory prerequisite to imposition of a dangerous offender sentence under ORS 161.725(1)(a), also satisfied the constitutional requirement identified in *Apprendi* that a jury find the facts supporting a sentence that exceeds the otherwise-prescribed statutory maximum sentence for a crime. Consistently with that understanding, we

again note that, in the context of dangerous offender sentences for crimes committed on or after November 1, 1989, the legislature itself considers the 30-year indeterminate term to constitute a "departure" sentence and, as noted, now provides for a jury finding of the predicate facts.

By contrast, the required incarceration term portions of defendant's dangerous offender sentences that he challenges as unlawful "departures" actually constitute merely mandatory minimum portions that defendant must serve *within* the longer, indeterminate terms before being released by the Board of Parole and Post-Prison Supervision onto post-prison supervision. *See* ORS 144.101(1)(d) (board has jurisdiction over persons sentenced as dangerous offenders); ORS 144.232 (setting out procedures and standards for release; offender is eligible for release after having served required incarceration term).

■ It is true that those minimum terms may vary in length—from no less than the otherwise-applicable presumptive sentence to no more than twice that amount. ORS 161.737(2). Nevertheless, required incarceration terms do not, where other statutory and constitutional requirements for imposition of the dangerous offender indeterminate maximum sentence have been met, exceed the prescribed statutory maximum sentence for the crime. Accordingly, *Apprendi* arguably does not apply to those purported "departures." *See Harris v. United States*, 536 US 545, 122 S Ct 2406, 153 L Ed 2d 524 (2002) (statute permitting sentencing court to increase a required minimum within the prescribed statutory maximum for the offense based on facts found by the court does not violate the defendant's jury trial right as explicated in *Apprendi*).

In sum, the jury found facts authorizing the trial court to sentence defendant to 30-year indeterminate maximum dangerous offender sentences—in name and in effect, "departure" sentences—on a number of his convictions. The trial court then established required minimum incarceration terms within those constitutionally valid departure sentences. Based on its own factual findings, the trial court set the challenged required minimum terms toward the upper end of their statutorily permitted range. None, however,

exceeded the permissible 30-year indeterminate maximum "departure" sentences themselves. At the very least, it is open to debate whether the trial court erred. It follows that the trial court did not plainly err.

■ Defendant also challenges the trial court's order that certain of the sentences be served consecutively. Relying on *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007), *cert granted*, ___ US ___ , 128 S Ct 1657 (2008), he challenges seven sentences that the trial court determined were subject to being served consecutively under ORS 137.123(5)(a) and (b)—in chronological order by commission of the offenses, the 30-year dangerous offender sentences imposed on his convictions for first-degree sodomy involving C, first-degree sodomy involving H, first-degree sexual penetration involving H, first-degree kidnapping involving Bittler, first-degree sodomy involving Bittler, first-degree rape involving B, and first-degree burglary involving B.[6] Defendant again concedes that he did not raise that issue below but argues that the error is plain because it is one of law, it can be identified without choosing among competing inferences or going outside the record, and the legal point is not reasonably in dispute.

The state concedes that the error is plain but urges this court not to exercise its discretion to correct it. The state argues that no reasonable jury could find that the additional crimes involving each victim were merely incidental violations of separate statutory provisions, as relevant to ORS 137.123(5)(a), or that the crimes did not cause or risk causing a greater or qualitatively different harm, as relevant to ORS 137.123(5)(b). Thus, the state argues, there is an overwhelming probability that the jury would find the factual predicates necessary for imposing consecutive sentences.

---

[6] Defendant does not challenge the trial court's imposition of consecutive sentences under ORS 137.123(2), pertaining to sentences for criminal offenses "that do not arise from the same continuous and uninterrupted course of conduct." As noted, the trial court imposed consecutive sentences under that provision on the first of each of defendant's convictions involving victims Bittler, H, J, and B. Defendant also, and properly, does not challenge his two concurrent sentences for the rape of C, despite the fact that, in practical terms, they must be served separately from other sentences in the case; rather, he challenges the sentence that the trial court ordered be served consecutively to them, as to which the trial court made findings under ORS 137.123(5)(a) and (b).

As we have noted, in imposing the challenged consecutive sentences, the trial court expressly found in each instance relevant facts under ORS 137.123(5)(a) and (b). In no instance did a jury find the relevant facts, either expressly or implicitly. *See State v. Hagberg*, 345 Or 161, 169-70, 190 P3d 1209 (2008) (in a particular case, it may be possible to determine from a jury's guilty verdict that it necessarily found beyond a reasonable doubt the relevant sentence enhancement facts; in such a case, the imposition of an enhanced sentence is not error). Accordingly, we agree that the trial court plainly erred.

We therefore consider whether to exercise our discretion to correct the error. Factors relevant to that inquiry include the nature of the case, the competing interests of the parties, the gravity of the error, and the ends of justice in the particular case. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). As pertinent to sentencing, we consider whether defendant encouraged the trial court's imposition of the erroneous sentences, the possibility that defendant made a strategic choice not to object to the sentences, the role of other sentences in the case, and the interests of the judicial system in avoiding unnecessary repetitive sentencing proceedings. *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007). As to the last factor, we also consider whether it is certain that, on remand, a jury would find the relevant fact. *See State v. Ramirez*, 343 Or 505, 513, 173 P3d 817 (2007), *adh'd to on recons*, 344 Or 195, 179 P3d 673 (2008) (if there is no legitimate debate about the existence of a sentence enhancement fact, the defendant's interest in a second sentencing hearing is minimal).

In this case, the role or effect of other, unchallenged sentences is dispositive. As we have noted, based on the chronological order in which defendant committed his crimes, defendant must serve six consecutive 30-year indeterminate maximum dangerous offender sentences, followed by a consecutive term of life in prison without parole, followed by five additional consecutive 30-year indeterminate maximum dangerous offender sentences. Four of the consecutive sentences—three dangerous offender sentences and the sentence of life without parole—were imposed under ORS 137.123(2). Defendant does not challenge those sentences.

Nor does he challenge the two concurrent dangerous offender sentences imposed on his convictions for the rape of C, which, as noted, effectively will be served consecutively to other consecutive sentences in the case. Thus, even assuming that defendant's challenges to his remaining consecutive sentences are well taken, he would nevertheless be required to serve three consecutive 30-year indeterminate maximum sentences, followed by a sentence of life without parole, followed by a final 30-year indeterminate maximum dangerous offender sentence.[7] In light of those unchallenged sentences—particularly defendant's unchallenged consecutive sentence of life without parole—the gravity of the trial court's error in ordering that the seven challenged sentences be served consecutively is minimal and a remand would have little practical effect. We therefore decline to exercise our discretion to correct the error. *See State v. Fults*, 219 Or App 305, 309, 182 P3d 267 (2008) (in light of other, unchallenged sentences, the gravity of the sentencing error was slight and it was unlikely that a remand would make any practical difference; court therefore declined to exercise its discretion to correct the error).

Affirmed.

---

[7] The three consecutive 30-year indeterminate maximum dangerous offender sentences that defendant would be required to serve before serving his sentence of life without parole include required incarceration terms of, respectively, 240 months, 240 months, and 240 months, that is, a total of 60 years.